Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA AMAYA, *individually and on behalf of all those similarly situated,* *Plaintiff,* | No. ________________________ |
| *v.* | **CLASS ACTION COMPLAINT** |
| TARGET CORPORATION, *a Minnesota corporation,* *Defendant.* | JURY TRIAL DEMANDED |

Maria Amaya ("Plaintiff"), individually and on behalf of all others similarly situated in the state of California, by and through undersigned counsel, hereby brings this action against Target Corporation ("Target" or "Defendant"), alleging that its Kindfull brand dry dog and cat foods ("the Products"),[1] which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised because they contain synthetic preservatives, and upon information and belief and investigation of counsel alleges as follows:

[1] The "Products" include all flavors of Kindfull dry cat foods labeled "Cat Food," "Adult Indoor Cat Food," "All Life Stages Cat Food," and "Kitten Food"; and "Dog Food," "All Life Stages Dog Food," "Small Breed Dog Food," and "Puppy Food," all of which feature the challenged representations and contain the challenged ingredients. Plaintiff reserves the right to amend this Complaint to add additional varieties as investigation into Product lines continues.

**PARTIES**

1. Plaintiff Maria Amaya is and at all times relevant was a citizen of the state of California, domiciled in Merced County. She purchased the Cat Food variant of the Products on or about December 31, 2025 from a Target store in Los Banos, California.

2. Defendant Target Corporation is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. On information and belief all decisions regarding formulation and labeling of the Products are made at this principal place of business.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4. Plaintiff seeks to represent Class members who are citizens of states and countries different from the Defendant.

5. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7. In the alternative, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; knowingly

directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

11. Defendant also sells the Products to retailers outlets in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

**FACTUAL ALLEGATIONS**

15. The Products' labels prominently represent that they are "Natural" pet foods that contain "No Artificial Colors, Flavors, or Preservatives":


kindfull.
Chicken & Salmon Recipe
Dog Food
Natural dog food with added vitamins, minerals & other trace nutrients
No artificial colors, flavors or preservatives


Natural cat food with added vitamins, minerals & other trace nutrients
No artificial colors, flavors or preservatives
Made in the U.S.A. with ingredients from around the world
kindfull.
Chicken & Brown Rice Recipe
Helps support healthy muscles and bones
Source of omega-3 fatty acids for healthy skin and coat
Contains whole grains
Cat Food
NET WT 3 LB (1.36kg)
Natural cat food with added vitamins, minerals & other trace nutrients
No artificial colors, flavors or preservatives

16. This representation is false. The Products contain both citric acid and mixed tocopherols. Citric acid and mixed tocopherols are both artificial preservatives:






17. Plaintiff prefers to purchase animal foods free from artificial or synthetic ingredients and reviewed and relied on the label statement described above in making her purchase.

**A. The Citric Acid In the Products Is An Artificial Preservative.**

18. While there is a natural form of citric acid extracted from fruit, this is not the form used by Target in the Products. This is because "[a]proximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919,"[2] and the use of naturally produced citric acid in commercial foods is prohibitively expensive.

19. Virtually all citric acid used in U.S. commercial food—including that used in the Products—is produced through a multi-step industrial manufacturing process, not by extraction from any natural source.

20. The modern citric-acid process begins with glucose (typically derived from genetically modified corn) which is fermented with the industrial mold *Aspergillus niger* in large-scale bioreactors. The resulting fermentation liquor is then chemically precipitated with calcium hydroxide to form calcium citrate, which is subsequently reacidulated with sulfuric acid and crystallized into refined citric acid. Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid from the *A. niger* fermentation liquor, and frequently survive the reacidulation process in fragmentary form.

21. These steps—microbial fermentation, chemical precipitation, and acid-base reacidulation—are classic hallmarks of synthetic manufacture, not natural derivation. The citric acid in the Products meets this definition precisely: it is not extracted from fruit or any natural material but is manufactured from industrial feedstocks using fermentation and chemical

[2] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL. REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/.

processing.[3] Reasonable consumers would not understand ingredients derived from these processes as "natural" or "not artificial."

22. The synthetic nature of citric acid made using this process has been repeatedly described in FDA Warning Letters and in other U.S. government and industry technical evaluations over the past several decades.

23. Because the citric acid in the Products is chemically synthesized, it cannot be labeled as "natural" (without accompanying disclaimers) pursuant to Title 17 of the Code of California Regulations, section 19025(q)(2). No such disclosures are made on the Products.

24. Reasonable consumers viewing a representation that a product contains "No Artificial Preservatives" do not expect the product to contain preservatives chemically synthesized through industrial fermentation, chemical precipitation, solvent extraction, and reacidulation processes rather than extracted from natural food sources

**B. The Tocopherols In the Products Are An Artificial Preservative.**

25. Tocopherols are fat-soluble compounds that are present in Vitamin E and possess antioxidant properties. In foods, added tocopherols are commonly used to inhibit oxidation and delay rancidity, thereby extending shelf life and maintaining freshness.

26. Tocopherol preparations used in commercial foods and pet foods are commonly supplied as concentrated blends of tocopherol compounds, often referred to as "mixed tocopherols," which are separately added during manufacturing to retard oxidation and extend shelf life.

27. Such mixed-tocopherol preparations are distinct from naturally occurring tocopherols inherently present in whole-food ingredients. Rather than occurring as incidental constituents of the finished Products, they are intentionally introduced as preservative systems to maintain freshness and prevent rancidity.

---

[3] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/.

28. Commercial mixed-tocopherol preparations such as those used in the Products are not the same thing as tocopherols naturally occurring in whole-food ingredients or even extracted from natural sources. They are concentrated ingredient systems separately manufactured, supplied, and added to foods for functional purposes.

29. When added to shelf-stable foods, mixed tocopherols function as antioxidants by slowing oxidative deterioration, including through preventing rancidity in fats and oils. This preservative function is particularly important in dry pet foods, which commonly contain animal fats and other lipid-containing ingredients that can oxidize and spoil during storage.

30. Target confirms this use on the Products' own ingredient panel, which states that "Mixed Tocopherols" are used for preserving chicken fats.

31. Various "isomers" or components of the blended mixed-tocopherols compounds used in the Products are derived from petrochemical sources. Their manufacturing process involves the synthesis of trimethylhydroquinone (TMHQ) and isopropyl, which are both sourced from petrochemical feedstocks such as acetone, phenol, and isobutylene.

32. Commercially available mixed-tocopherol preservative systems such as those used in the Products are chemically synthesized through substantial industrial extraction, concentration, purification, distillation, and/or synthesis processes and are supplied as separate commercial ingredients for incorporation into food products.

33. Such processing distinguishes the mixed-tocopherol preservative systems used in the Products from naturally occurring tocopherols present in whole-food ingredients.

34. These chemical synthesis processes also produce artificial tocopherols for use as a preservative in pet foods such as the Products at a cost that is generally half or less than the cost of extracting tocopherols from natural sources. For this reason, tocopherols used as preservatives in pet foods are nearly universally chemically synthesized, rather than derived from natural sources.

35. Reasonable consumers distinguish between naturally occurring compounds inherently present in or extracted from whole foods ingredients and chemically synthesized

preservative systems separately introduced during manufacturing. Consumers viewing a representation that the Products contain "No Artificial Colors, Preservatives, or Flavors" do not expect the Products to contain added preservative preparations derived from petrochemical sources and subject to chemical synthesis.

36. Defendant's representation is therefore false or misleading because the Products contain chemically synthesized mixed tocopherols that are intentionally added as preservatives.

37. Because the tocopherols in the Products are chemically synthesized, they cannot be labeled as "natural" (without accompanying disclaimers) pursuant to Title 17 of the Code of California Regulations, section 19025(q)(2). No such disclaimer appears on the Products.

**C. Plaintiff Lacks an Adequate Remedy at Law.**

38. Plaintiff seeks restitution under the Unfair Competition Law and False Advertising Law in the alternative because she has no adequate remedy at law.

39. A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff must show that the Product he received has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased products that she would not otherwise have purchased, but for Defendant's misrepresentations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

40. Also, winning damages under the CLRA requires additional showings not required under equitable causes of action. For example, the CLRA prohibits only particular categories of deceptive conduct. By contrast, equitable causes of action such as unjust enrichment, the UCL, and the FAL broadly prohibit "unfair" conduct.

41. By the same token, Plaintiff's common law claims require additional showings, compared to the unjust enrichment claim. For example, to prevail on the breach of warranty claim, Plaintiff needs to show that the challenged statements constitute a warranty and that the warranty was part of the basis of the bargain. No such showings are required under an unjust enrichment theory. And unjust enrichment exists in part because contractual claims are often

more difficult to establish. In this way, Plaintiff's UCL, FAL, and unjust enrichment claims are more certain than the CLRA claim.

42. Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

43. The Products are sold for similar prices, using similar labeling and graphical design, and make identical misrepresentations regardless of flavor or type of Product. All flavors and varieties of the Products contain citric acid and mixed tocopherols. Plaintiff is therefore an adequate representative of a putative class despite not having purchased every flavor or variant of the Products.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint.

45. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

46. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

47. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

48. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state of California.

49. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

a. Whether the packaging and labeling for Defendant's Products is misleading and deceptive;

b. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

c. Whether Defendant breached an express warranty;

d. the proper amount of damages;

e. the proper scope of injunctive relief; and

f. the proper amount of attorneys' fees.

50. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

51. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

52. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

53. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

54. There are no defenses available to Defendant that are unique to the named Plaintiff.

55. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

56. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

57. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests

of other Class members or would substantively impair or impede their ability to protect their interests.

58. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

59. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Defendant continues to mislabel the Products in the manner described herein and sell them to the consuming public. Plaintiff would like to purchase the Products and other products sold by Defendant in the future, but cannot currently do so because he cannot rely on the Products' labelling, given the misrepresentations found on Defendant's Products. An injunction prohibiting future deceptive labelling is therefore warranted; would provide Plaintiff and the Class relief; and would permit Plaintiff and the Class to purchase Defendant's goods.

60. Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with federal and state regulations regarding the accurate reporting of the use of artificial preservatives in the Products would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

61. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

62. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *et seq.***

63. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

64. Plaintiff is a "consumer" within the meaning of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

65. The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

66. The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

67. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the use of artificial preservatives in the Products.

68. Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in at least these respects:

a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised; and

d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling.

69. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

70. Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by its legal obligations and to give notice to all affected customers of its intent to do so. Plaintiff sent this notice by certified mail to Defendant, at least 30 days before the filing of this Complaint.

71. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

**COUNT 2**
**UNJUST ENRICHMENT**

72. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative in the event that he has an inadequate remedy at law.

73. Under California law, a claim for unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.* (9th Cir. 2015) 783 F.3d 753, 762 (quoting 55 *Cal. Jur*. 3d *Restitution* § 2). Thus, when a plaintiff alleges unjust enrichment, the Court should "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 225. Courts in California have allowed unjust enrichment and CLRA claims to proceed in the alternative. *See Scheibe v. Livwell Prods., LLC,* No. 23-cv-216, 2023 WL 4414580, at *8 (S.D. Cal. 2023).

74. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers by failing to disclose the use of artificial preservatives in the Products.

75. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

76. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

77. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

78. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

79. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

80. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

**COUNT 3**
**BREACH OF EXPRESS WARRANTY**

81. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

82. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products were free of artificial preservatives.

83. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

84. The Products do not conform to the express warranty that the Products were free of artificial preservatives.

85. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' use of

artificial preservatives; (b) they paid a price premium based on Defendant's express warranty; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

**COUNT 4**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq.* — "UNFAIR" CONDUCT**

90. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

91. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

92. Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

93. Defendant's business practices, as alleged herein, are "unfair" because it fails to disclose that the Products contain artificial preservatives.

94. As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

95. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

96. Defendant publicly disseminated untrue or misleading representations regarding the use of artificial preservatives in its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

97. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and

any other act prohibited by law, including those acts set forth in this Complaint, and further seek all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 5**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq.* — "FRAUDULENT" CONDUCT**

98. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

99. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

100. Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

101. Defendant's business practices, as alleged herein, are "fraudulent" because it fails to disclose that the Products contain artificial preservatives.

102. As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

103. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

104. Defendant publicly disseminated untrue or misleading representations regarding the use of artificial preservatives in its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

105. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint,

and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 6**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq*. — "UNLAWFUL" CONDUCT**

106. Plaintiff reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

107. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

108. Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

109. Defendant's business practices, as alleged herein, are "unlawful" because it fails disclose that the Products use artificial preservatives, which constitutes a violation of *inter alia* the Consumers Legal Remedies Act.

110. As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

111. Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

112. Defendant publicly disseminated untrue or misleading representations regarding the use of artificial preservatives in its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

113. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices

and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 7**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500 *et seq.***

114. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

115. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

116. Defendant engaged in advertising and marketing to the public and offered for sale Products on a nationwide basis, including in California.

117. Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

118. Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

119. At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq*.

120. Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a. Certifying the Class;
b. Declaring that Defendant violated the statutes described herein and/or was unjustly enriched and/or breached an express warranty;

c. Ordering an award of actual, general, or compensatory damages, as permitted by law, in an amount to be proven at trial;

d. Ordering restitution or disgorgement, as permitted by law, in an amount to be proven at trial;

e. Ordering an awarding of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

f. Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

g. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

h. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

July 8, 2026